

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ROBERT GORODETSKY

No. 20 CR 40

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant ROBERT GORODETSKY, and his attorney, CHRIS GAIR, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.     The information in this case charges defendant with wire fraud in violation of Title 18, United States Code, Section 1343, and filing a false tax return in violation of Title 26, United States Code, Section 7206(1).

3.     Defendant has read the charges against him contained in the information, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the information:   Count One, which charges defendant with wire fraud in violation of Title 18, United States Code, Section 1343; and Count Two, which charges defendant with filing a false tax return in violation of Title 26, United States Code, Section 7206(1).

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the information.   In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline §1B1.3:

a.   With respect to Count One of the information:

Beginning in or around February 2014, and continuing through in or around April 2018, in the Northern District of Illinois and elsewhere, defendant ROBERT GORODETSKY knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from Individual A by means of materially false and fraudulent pretenses, representations, and promises, and by the concealment of material facts.

More specifically, in approximately February 2014, GORODETSKY represented himself to Individual A be a successful investor in the stock market, particularly in the area known as "day trading."   In February 2014, GORODETSKY

2

entered into an agreement with Individual A in which GORODETSKY would invest a pool of funds supplied by himself and Individual A in the stock market and share the profits and losses on a pro-rata basis. GORODETSKY had no funds or assets to invest, but he obtained approximately $953,000 from Individual A for the purpose of investing in U.S. stocks. GORODETSKY invested approximately $215,000 of Individual A's funds in an E-Trade account and converted the remaining $737,388 for his own personal use.

In approximately July 2014, GORODETSKY falsely represented to Individual A that his stock market investment of $953,000 had increased to approximately $2 million. At the time GORODETSKY made this false representation, the value of Individual A's stocks was approximately $71,388, and GORODETSKY had concealed his conversions of Investor A's funds and trading losses. GORODETSKY falsely told Individual A that they could realize greater returns in sports wagering and that he would use Individual A's existing $2 million investment together with GORDETSKY's own funds and become equal partners in sports wagers.

Between July 2014 and November 2017, GORODETSKY induced Individual A to invest approximately $8,740,000 of additional funds for the purpose of wagering on specific sporting events. GORODETSKY caused these funds to be deposited into accounts he caused to be opened at multiple banks, including an account at U.S. Bank in Glenview, Illinois. One such deposit was a wire transfer occurring on April 17, 2017, in which Individual A wire transferred $200,000 from his account at Citibank

3

in New York, to GORODETSKY's account with account number ending in xxxx7568 at U.S. Bank in Illinois. Defendant acknowledges that this wire transfer was an interstate communication terminating in the Northern District of Illinois.

Between July 2014 and November 2017, GORODETSKY used much of Individual A's $8,740,000 investment for purposes unrelated to wagering on sports contests, including his conversion of more than $2.2 million to pay living, travel, and entertainment expenses as well as to acquire assets including luxury automobiles and jewelry.

Defendant's fraudulent conduct resulted in a loss to Individual A of approximately $7,106,888.

b. With respect to Count Two of the information:

During calendar years 2014 through 2017, GORODETSKY obtained funds and income by fraud and used these funds for his personal benefit. During calendar years 2014 through 2017, GORODETSKY collected investment proceeds from Individual A totaling approximately $9,693,000. During calendar years 2014 through 2017, GORODETSKY converted approximately $7,106,888 of these proceeds to his own personal benefit. Defendant GORODETSKY caused tax returns to be filed for tax years 2014 through 2017 in which he did not report all of the income he received and failed to include the funds from Individual A that he used for his personal benefit.

On or about October 4, 2017, in the Northern District of Illinois, GORODETSKY willfully caused to be made and subscribed, a U.S. Individual Income

4

Tax Return (Form 1040 with schedules and attachments), for the calendar year 2016, which return was verified by written declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that said return reported on Line 22 that his total income was $10,520, when defendant knew that he received additional income of at least $2,579,500 that year from the funds he converted from Individual A. This conduct resulted in a federal tax loss of approximately $979,312.

On or about October 17, 2015, GORODETSKY filed a false Form 1040 for tax year 2014 in which he reported his total income as $197,000, and willfully failed to report his receipt of at least $1,567,388 in additional income that he received from funds he converted from Individual A. This conduct resulted in a federal tax loss of approximately $604,742.

On or about October 16, 2016, GORODETSKY filed a false Form 1040 for tax year 2015 in which he reported his total income as $-3,000, and willfully failed to report his receipt of at least $2,270,000 in additional income that he received from funds he converted from Individual A. This conduct resulted in a federal tax loss of approximately $851,606.

On or about October 15, 2018, GORODETSKY filed a false Form 1040 for tax year 2017 in which he reported his total income as $-7,000, and willfully failed to report his receipt of at least $690,000 in additional income that he received from

funds he converted from Individual A. This conduct resulted in a federal tax loss of approximately $223,772.

Therefore, the charged and relevant conduct resulted in a tax loss of approximately $2,659,432.

## Maximum Statutory Penalties

7.      Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.      Count One carries a maximum sentence of 20 years' imprisonment. Count One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.    Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

b.      Count Two carries a maximum sentence of 3 years' imprisonment. Count Two also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than one year.

c.       Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

d.       Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 23 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, mandatory costs of prosecution, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

8.       Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities

7

among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b. **Offense Level Calculations**.

<u>Count One</u>

i. The base offense level for Count One is 7, pursuant to Guideline § 2B1.1(a)(i).

ii. The base offense level is increased by 18 levels, pursuant to Guideline § 2B1.1(b)(1)(J), because the loss of approximately $7,106,888 is more than $3,500,000 but less than $9,500,000.

<u>Count Two</u>

i. The base offense level for Count Two is 24 including relevant conduct, pursuant to Guidelines §§ 2T1.1(a) and 2T4.1(I), because the tax loss of approximately $2,659,432 is more than $1,500,000 but less than $3,500,000.

8

ii.    The base offense level is increased by 2 levels, pursuant to Guideline § 2T1.1(b)(1), because the defendant failed to report or correctly identify the source of income exceeding $10,000 in any year from criminal activity.

Grouping

iii.    Pursuant to Guideline §§ 3D1.1 and 3D1.4, Count Two has the highest offense level (26) and is treated as one Unit. The offense level for Count One (25) is 1 to 4 levels less serious than that of Count Two, and as such is counted with an additional Unit. The 2 Units result in a 2 level increase in the offense level for Count Two, resulting in a combined offense level for Counts One and Two of 28.

iv.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court

determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.      **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.      **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 25, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 57 to 71 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.      Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation.

Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

11

13.     Regarding restitution on Count One, defendant acknowledges that the total amount of restitution owed to Individual A is approximately $7,106,888, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

14.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 40.

18.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

19.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

### Waiver of Rights

20.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

13

a.   **Right to be charged by indictment**. Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.   **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.   The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.   If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.   If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving

14

defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

      iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

15

c.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

21.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

22.     Defendant understands that he has the right to be prosecuted for any criminal offense in the district or districts where the offense was committed. By signing this Agreement, defendant knowingly consents to prosecution of the charges against him in the Northern District of Illinois and waives any objection to the venue of this prosecution.

**Presentence Investigation Report/Post-Sentence Supervision**

23.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

16

24.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

**Other Terms**

26.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27.     Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

28.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or

18

administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

29.      Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

30.      Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

31.      Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in

accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

32. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

33. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

34. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: February 5, 2020

JOHN R. LAUSCH, JR.
United States Attorney

ROBERT GORODETSKY
Defendant

PATRICK J. KING, JR.
Assistant U.S. Attorney

CHRIS GAIR
Attorney for Defendant

20