UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA   )
                            )       No. 20 CR 40
     vs.                )
                            )       Judge Elaine E. Bucklo
ROBERT GORODETSKY     )
                            )

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The UNITED STATES OF AMERICA, through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby respectfully moves this Court to impose a sentence within the applicable advisory guideline range and in support of its recommendation the government states as follows:

**I.      Presentence Report**

Other than the PSR's guideline calculation, which incorrectly grouped the offenses of wire fraud (Count One) and tax fraud (Count Two), the government has no other objections or corrections to the remainder of the PSR. The government agrees with and has no objection to the proposed conditions of supervised release.

1

*Grouping*

The PSR asserts that pursuant to Guideline 3D1.2(c), the counts of conviction (wire fraud and tax fraud) should be grouped, because one of the counts embodies conduct that is treated as a specific offense characteristic in the guideline applicable to the other count. PSR at ¶23. This reading of the Guidelines is contrary to the law of this Circuit. *United States v. Vucko*, 473 F.3d 773 (7th Cir. 2007)(finding that grouping of wire fraud and filing a false tax return would seriously undercut the concept of "incremental punishment" that underlies the grouping rules and the Guidelines as a whole) *Id*. at 781. Additionally, a majority of the circuits that addressed this issue have concluded that fraud counts and tax counts involving proceeds of the fraud should not be grouped together under subsection (c) or (d) of Guideline 3D1.2. See *United States v. Doxie*, 813 F.3d 1340, 1346 (11th Cir. 2016). Therefore, the combined offense level in this case should reflect that the charged offenses are not grouped.

## II.   Sentencing Factors

Although the sentencing court must consider the advisory sentencing guideline range in imposing sentence, it is just one factor to be taken into consideration in addition to the factors set forth in 18 U.S.C. §3553. In

considering all of these factors, the government believes a sentence at the low end of the applicable guideline range is appropriate.

### A. Nature and Circumstances of the Offense

*Wire Fraud*

Gorodetsky was charged with conducting a four-year scheme in which he defrauded his girlfriend's father of more than $7 million. Gorodetsky held himself out as a successful stock market investor, particularly in day trading. Gorodetsky's representations were false, in that he was largely unsuccessful in whatever trading activity he engaged in, and his trading used other people's money rather than his own. Gorodetsky's relationship with the father continued after his relationship with the daughter ended.

Initially, Gorodetsky induced the victim to give him money that would be pooled with Gorodetsky's own funds and invested by Gorodetsky in U.S. stocks. Gorodetsky represented that they would share in the profits in this investment pool on a pro-rata basis. Between February and July 2014, the victim invested $953,000 with Gorodetsky. Gorodetsky had no funds of his own to invest, invested only $215,000 of the victim's funds in an E-Trade account, and converted the remaining $747,388 of victim funds to his own use. By July 2014, defendant falsely represented to the victim that his investment

3

had increased from $953,000 to approximately $2 million, when in reality the total value of the $215,000 invested in the E-Trade account was less than $72,000.

Capitalizing on the false claims of his investment prowess and purported returns on the initial investment, Gorodetsky next told the victim that they could realize greater returns in sports wagering than they obtained in the market. Gorodetsky proposed using the victim's purported "$2 million" stock trading investment together with his own funds to become equal partners in sports wagering.

Between July 2014 and November 2017, defendant induced the victim to invest an additional $8,740,000 for the purpose of their sports wagering pool. As before, Gorodetsky had no money of his own to invest, and routinely provided false account balance statements, as well as e-mails and text messages highlighting the purported extraordinary returns on the investment. Just as before, Gorodetsky routinely misrepresented how he was using the victim's funds. Between July 2014 and November 2017, defendant used more than $2.2 million of the victim's funds to pay living, travel, and entertainment expenses as well as to acquire luxury automobiles and jewelry.[1] During the

---

1   The vehicle purchases included a Rolls Royce, a Bentley, and two Lamborghinis.   His watch and jewelry purchases were in excess of $324,000.

three-year period, defendant collected approximately $9.6 million from the victim, returned approximately $2 million and used approximately $7.1 million.

*Tax Fraud*

In calendar years 2014 through 2017, the defendant received substantial income in excess of the amount he reported. In 2014, he reported income of $197,000, but failed to report additional income of at least $1.5 million. In 2015, he reported -$3000 in income but failed to report his receipt of at least $2.2 million. In 2016, he reported income of $10,520 but failed to report his receipt of at least $2.5 million. In 2017, he reported -$7,000 but failed to report his receipt of approximately $690,000. In each of those years, the defendant's spending on assets, entertainment, and hotel room charges exceeded the income he reported on his tax returns.[2]

**Characteristics of the Defendant**

Defendant claims that he has been a problem gambler from his youth, including the time he claimed to have run a gambling business in high school. While defendant posits several explanations for his desire to gamble, he cannot

---

2   For example, in 2010 he reported income of $10,520, but made more than $400,000 in personal expenditures that included a $193,991 Lamborghini, $83,250 Rolex watch, $16,647 diamond bracelet, Wynn Casino room charges of $96,722, and Stub Hub expenses of $10,445.

explain his repeated willingness to victimize others. Prior to stealing from his girlfriend's father, the defendant stole from others whom he befriended. Between 2011 and 2012, defendant solicited investment funds at least $516,570 from at least eight investors, of which, he converted approximately $231,500 to his own use and lost the remainder in trading.[3] One Chicago area investor obtained a repayment agreement from the defendant, while another obtained a court judgment against him. Other investors seeking repayment contacted the defendant and his parents. Neither his prior failures, the prior court judgment, nor his repayment agreement with an earlier victim, did anything to temper the defendant's willingness to continue to defraud. Defendant used the victim's funds not just to gamble, but used a substantial portion to fund a lifestyle of living in hotels, funding expensive nightlife and entertainment, acquiring tangible luxury items.

### C. Need for the sentence to reflect seriousness of the offense, promote respect law and provide just punishment

Fraud is a crime of personal violation. Individuals largely trust their judgment and trust others whom they know and with whom they feel affinity. When an individual close to you intentionally and repetitively defrauds you,

---

[3] In 2011 he obtained $225,000 from a friend's father ("CH") purportedly to invest in the market (of which he used approximately $30,000 to purchase a vehicle and $42,000 to repay a prior investor). In 2012 he obtained $60,000 from his friend "AT" purportedly to invest in stocks. In 2012, he obtained $39,000 from "JJ" and his mother to invest in stocks. In 2012 he obtained $120,000 from ("FG").

your trust in your judgment and trust of others is shattered. Virtually anyone can fall prey to fraud, and fraud victims come from all financial, educational, social, cultural, and age levels. Frauds such as this can extend for protracted periods because the victims want to believe the representations made by those close to them. Lulling and false reports of the safety and success of the investments are particularly effective with those victims who are predisposed to believe the perpetrator. Fraud victims do not always report their losses, particularly if they are experiencing denial, embarrassment, shame, guilt, and a sense of betrayal. At other times, victims do not report losses because they feel that nothing will result from reporting the crime. Although fraud victims often *feel* that they have themselves to blame, it is the fraudster who is responsible for the crime.

The size of defendant's theft is staggering. Defendant was shameless in his pursuit of the victim's money, repeatedly made false representations about the investment – repeatedly claiming that the victim's assets were ever increasing, while at the same time securing additional funds.

The defendant made no effort to pursue any lawful form of employment but lived and gambled on funds he obtained from others. He used investor money to live in hotels, drive luxury cars, and engage in lavish personal and

7

entertainment spending. The size and scope of his conduct require the imposition of a sentence sufficient to provide just punishment.

### D. To afford adequate deterrence

The defendant's conduct calls for a sentence that affords both personal and general deterrence. Defendant's offenses are neither victimless nor without consequence. Defendant's crimes provided him with a source of free money that he felt that he did not need to account for, and allowed a more comfortable lifestyle than he would have otherwise. In prior, smaller, but similar conduct, he managed to spend what he spent, and keep what he kept, largely without consequence.

Theft and fraud are persistent problems where the temptation to commit the offense is great, and only a fraction of offenders are caught or are held to account. Defendant's adverse experiences with prior victims did nothing to deter him. Rather, he increased the size and scope of his thefts. Restitution, though mandated by statute, is offers a weak deterrent, particularly with an individual whose ability to make any significant restitution is minimal. Defendant's repeated thefts were not impulsive. Personal and general deterrence requires that each time this or any other offender considers defrauding another, that they recognize a realistic

consequence that exceeds the benefits of going forward with the crime.

### E.   The Kinds of Sentences Available

The maximum term of imprisonment is twenty-three years, twenty years on Count One and three years on Count Two.   The maximum fine is $500,000 or twice the gross gain or loss resulting from the counts of conviction.   The counts of conviction also provide for a term of supervised release of not more than three years on Count One and one year on Count Two. The Sentencing Guidelines provide for an advisory sentence of imprisonment 41 to 51 months's imprisonment.   Restitution in the amount of $7,106,888 is required to be paid to the victim of Count One.

### F.  To Avoid Unwarranted Sentence Disparities

The Seventh Circuit has previously held that a sentence within the advisory guideline range is the surest way to avoid unwarranted disparities because the Guidelines are designed to ensure like treatment of like situations. *United States v. White*, 737 F.3d 1121, 1144 (7th Cir 2013) *citing United States v. Babul*, 476 F.3d. 498 501-02 (7th Cir. 2007).

### III.   Conclusion

Defendant's conduct was repetitive and willful.   The sentence imposed must be sufficient to account for the seriousness of the offense, significant societal harm, and the need to deter others.   For these reasons, the

government recommends a sentence within the guideline range, restitution in

the amount of $7,106,888, and the maximum term of supervised release.


                                    Respectfully submitted,

                                    JOHN R. LAUSCH, JR.
                                    United States Attorney


                            By: s/Patrick J. King, Jr.
                                  Patrick J. King, Jr.
                               Assistant United States Attorney
                                219 S. Dearborn Street
                                Chicago, IL 60604